IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


TIMOTHY J. FITZGERALD,                )          CV. NO. 11-00111 DAE-KSC
individually, and GORDON P.A.         )
SMITH, individually,                  )
                                      )
            Plaintiffs,               )
                                      )
      v.                              )
                                      )
PACIFIC SOURCE, INC., a               )
Washington corporation, and MARK      )
MASON, individually and as            )
President of Pacific Source, Inc. and )
DOES 1 through 20 inclusive,          )
                                      )
            Defendants.               )
_____ )


ORDER: GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT

            On April 18, 2012, the Court heard Defendants Pacific Source, Inc.

and Mark Mason's Motion to Dismiss First Amended Complaint, or in the

Alternative, for Summary Judgment.  Arnold Thielens Phillips II, Esq., appeared at

the hearing on behalf of Plaintiffs Timothy J. Fitzgerald and Gordon P.A. Smith;

Simon Kelvansky, Esq., and Nicole D. Stucki, Esq., appeared at the hearing on

behalf of Defendants.  After reviewing the motions and the supporting and

opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART

Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

(Doc. # 59).

<u>BACKGROUND</u>

This case stems out of bonding agreements involving the construction

of two separate properties on Maui.  Defendant Pacific Source, Inc. ("PSI") is a

material supplier in the State of Washington that also provides "materialmen's"

construction bonds on projects pursuant to which it serves as a surety.  (Doc. # 13-

1 ¶ 3.)  Defendant Mark Mason ("Mason") is president of PSI.  ("Mason Decl.,"

Doc. # 60-1 ¶ 1.)  Aloha Package Homes ("APH") was a company that provided

homebuilding services, including designing homes, providing materials, and

helping customers find a contractor.  ("Parsons Aff.," Doc. # 67-3 ¶ 3.)  Virginia

Parsons ("Parsons") was the sole member-manager of APH.  ("Parsons Decl.,"

Doc. # 69-1 ¶ 3.)  For several years, PSI provided construction bonds for various

APH projects and sold APH building materials for those projects.  (Doc. # 13-1

¶ 4–7.)  As surety, PSI would receive funds from the lenders of the projects and

would pay the amounts owed to the subcontractors and other material suppliers.

(<u>Id.</u> ¶ 8.)  According to PSI, APH became delinquent on several construction

projects to which PSI had supplied materials.  (<u>Id.</u> ¶ 11.)

Plaintiffs Timothy J. Fitzgerald ("Fitzgerald") and Gordon P.A. Smith ("Smith") (collectively, Plaintiffs) each entered into bonding agreements with PSI for the construction of their respective homes. ("FAC," Doc. # 56 ¶ 11; Docs. # 60-5; 60-6.) Plaintiffs allege that PSI misused the bonded funds for their projects by diverting some of the funds to pay invoices for unrelated projects. (FAC ¶¶ 24–26; 37, 42, 56; 77–78.)

Plaintiffs assert that as a result of PSI's actions, they had to advance their own funds to complete the construction of their respective projects. (FAC ¶¶ 57, 79.) Fitzgerald further alleged that the advancement of his funds resulted in him filing for Chapter XIII bankruptcy protection. (FAC ¶ 58.)

I. Fitzgerald's Vineyard Project

On August 27, 2007, Fitzgerald and Parsons,[1] who worked together at

---

[1] As noted in the Court's Motion to Strike discussion, infra, the FAC repeatedly omits references to Parsons as a party in the Vineyard Project, but rather refers only to Fitzgerald as entering into contracts and participating in communications. For example, ¶ 12 of the FAC states that "Fitzgerald entered into a construction contract with his contractor Thomas Martin," and ¶ 13 states that "Fitzgerald, along with his contractor, entered into a Uniform Performance Bond Agreement of Contract and Agreement Bond[.]" Moreover, the FAC also appears to mischaracterize certain documents and communications as either originating from or received by Fitzgerald, when the documents state that they originated from or were received by Parsons or APH. In a Declaration filed March 28, 2012, Parsons stated that she is a partner with Fitzgerald in the Vineyard Project, that they shared and reviewed documents pertaining to the project, and that she was "the hub of correspondence" on the project between PSI and others. (Doc. # 69-1

APH, entered into a construction contract ("Vineyard Construction Contract") with contractor Thomas A. Martin ("Martin") to build a "residence" at 2276 Vineyard Street, Wailuku, Hawaii ("Vineyard Project").[2] (Doc. # 69-2; "Fitzgerald Aff.," Doc. # 67-1 ¶ 4.) The Vineyard Construction Contract provided that Martin would pay for all material, labor, equipment and other necessary items to complete the Vineyard Project, and that Parsons and Fitzgerald would in return pay Martin $393,599.00. (Doc. # 69-2.) One of the general conditions of the contract was that Martin "furnish a performance and payment bond in an amount equal to one hundred percent (100%) of the contract price." (Id.)

On or about December 17, 2007, Fitzgerald, Parsons, Martin and PSI entered into a Uniform Performance Bond, Assignment of Contract and Agreement Bond ("Vineyard Bond"). (Doc. # 69-3.) On December 17, 2007, Fitzgerald and Parsons entered into a construction to mortgage contract with American Savings

---

¶¶ 5–6.)

[2] The Court notes that the FAC characterizes the Vineyard property as Fitzgerald's "residence," and a "personal consumer residence." (See FAC ¶¶ 11, 13, 23.) Fitzgerald also describes the project as "my home" in a March 19, 2012 affidavit. (Doc. # 67-1 ¶ 4.) However, Virginia Parsons, in a July 6, 2011 declaration, stated that the Vineyard Project is a "multi-purpose residential building with rental units." (Doc. # 34 at 2.)

Bank.[3]  (Doc. # 69-4.)  Construction draws were funded to the PSI bonding account from the lender of the project.  (FAC ¶ 15; Doc. # 13-1 ¶ 8.)

On February 18, 2009, Fitzgerald, along with Parsons and her husband, Dale Parsons, signed a Limited Agreement of Guaranty and Indemnity, guaranteeing payment of all credit extended by PSI to APH.  (Doc. # 69-28.)

Plaintiffs allege that Defendants diverted Vineyard Project bonded funds to pay invoices for unrelated projects, and that during the construction, Mason, in his capacity as president of PSI, refused to pay a Request for Payment on the Vineyard Project.  (FAC ¶¶ 22, 37, 51.)  According to the FAC, this required Fitzgerald to pay for "any shortfall in the bond account if he wanted his home finished."  (FAC ¶¶ 37, 51.)  Plaintiffs allege that when construction was complete, Fitzgerald should have received unused money from the bond fund and expected to be reimbursed for "any advancement of his personal funds" to complete the project.  (Id. ¶ 54.)  Plaintiffs also allege that PSI made Fitzgerald "liable for falsified unpaid Vineyard Project invoices planted on an APH aging statement that were previously paid for."  (Doc. # 68 at 10–11.)  Plaintiffs further

_____

[3] Fitzgerald also has a case pending in this Court against American Savings Bank in connection with the Vineyard property mortgage.  See Fitzgerald, et al. v. American Savings Bank F.S.B., et al., Cv. No. 11-00199 DAE-RLP.

allege that Defendants falsified certain financial records and communications regarding the project bond statements, checks and invoices. (FAC ¶ 82.)

## II.  Smith

In the fall of 2009, Smith contacted APH and met with Parsons and Fitzgerald to discuss designing and supplying the building materials for Smith's home. ("Smith Aff.," Doc. # 67-2 ¶ 4.) On December 4, 2009, Smith and his wife (who is not a party in this action) contracted with APH to supply the materials and oversee the financial expenditures of the construction, including draws and payment disbursements. (Id. ¶ 11; Doc. # 67-9.) On the same day, the Smiths entered into a construction contract ("first Smith construction contract") with Lehua Management Services ("Lehua") and APH. (Doc. # 67-8.) Under the construction contract, in which Lehua was named contractor, the Smiths agreed to pay APH, and APH agreed to distribute, the funds for the project. (Id.) The contract also referenced the APH materials contract. (Id.) The total figure for the Smith Project was $430,000. (Doc. # 67-8.) According to Smith, the figure included $282,693 for labor provided by Lehua, a $38,307 contingency fund for some of the materials that Smith previously purchased, $106,850 for the APH building materials package, and $2,150 for an administrative fee to PSI for bonding. (Smith Aff. ¶ 9, 13.)

Lehua decided to use PSI for bonding the Smith Project. ("Parsons Aff.," Doc. # 67-3 ¶ 22.) According to Plaintiffs, on January 19, 2010, Mason informed Parsons by phone that he would not bond the Smith Project unless she rewrote the construction contract and removed references to APH. (Parsons Aff. ¶ 23.) On or about January 25, 2010, the Smiths entered into a new construction contract ("Smith Construction Contract") with Lehua only; the contract eliminated references to APH, including any reference to an APH materials contract. (Doc. # 67-11; Parsons Decl. Ex. 29.) The Smith Construction Contract states in part that "Owner hereby agrees to pay Contractor through Contractor's bonding entity, and Contractor's bonding entity agrees to distribute" the funds for the project. (Doc. # 67-11.)

Unlike the Vineyard Construction Contract, the Smith Construction Contract also contains a "contingency/allowance" provision that states:

> The total construction cost includes an owner contingency/allowance fund of $32,565.00 for building materials as specified per the materials contract that Owner has agreed to supply.

(Doc. # 56-34; Doc. # 69-34.) A January 29, 2010 Change Order by APH, which was approved by Smith, deleted certain kitchen materials and thus added $5,742.00 to the contingency amount, bringing the total amount allocated to contingency/allowance to $38,306.77. (Doc. # 60-8.) The $38,306.77 is included

in the $430,000.00 contract price.  ("Duvauchelle Decl," Doc. # 60-2 ¶ 11; Smith Aff. ¶ 13.)

On February 2, 2010, Smith, Lehua, and PSI signed a Uniform Performance Bond, Assignment of Contract and Agreement Bond ("Smith Bond") for the construction of a residence at 3076 Alaneo Place, Wailuku, Hawaii 96793 ("Smith Project").  (Doc. # 60-6.)  PSI was the surety on the bond, and as the surety, received money from the project lender and disbursed funds to subcontractors. ("Mason Decl.," Doc. # 60-1 ¶ 3; Duvauchelle Decl. ¶ 8.)

Through January and February, APH continued to provide its services to Lehua and the Smiths.  (Parsons Aff. ¶ 28.)  On February 16, 2010, Parsons sent PSI a budget for the Smith Project that included $27,869 for APH.  (Parsons Aff. ¶ 29; Doc. # 67-12.)  On February 18, 2010, Parsons submitted a Request for Payment for $27,869—$25,774 of which was requested from the first construction draw.  (Parsons Aff. ¶ 31.)  On or about February 22, 2010, a construction draw from the bonded Smith construction loan in the amount of $180,600 was funded to PSI's bonding account.  (Id. ¶ 63; Doc. # 69-36.)  According to Plaintiffs, PSI informed Parsons that Mason would not release the funds Parsons requested. (Parsons Aff. ¶ 34.)    According to Plaintiffs, Lehua began ordering materials directly from PSI.  (Id. ¶ 64.)

On February 26, 2010, Mason sent Parsons an email stating: "We are applying the funds due APH from the Smith job, $25,774.00, as an offset against your account to Pacific Source." (Doc. # 69-39.) PSI has stated that it received funds from the lender for Smith's project, a portion of which otherwise would be due to APH, but that it applied those funds as an offset against the outstanding debt APH owed PSI on a different construction project. (Doc. # 13-1 ¶ 11.)

In a March 9, 2010 bonding statement, PSI listed a $106,850 "APH Material Package" and indicated that PSI paid $30,537.83 of that total. (Doc. # 69-38.) Plaintiffs contend this was a false statement because APH was no longer supplying services to Smith and the funds extracted were not applied to the Alaneo Project. (FAC ¶¶ 72–73.)

Plaintiffs also allege that on April 6, 2010, PSI used Smith's funds to pay off Vineyard Project invoices that were improperly added to the APH aging statement. Plaintiffs further assert that as a result, Smith had to advance $33,437.55 of his own funds to complete the construction of his home. (FAC ¶ 79.)

## PROCEDURAL HISTORY

On February 22, 2011, APH, Smith, Parsons, Dale Parsons, and Fitzgerald filed a Complaint against PSI and Mason. (Doc. # 1.) The Complaint

alleged a violation of the Equal Opportunity Act; debt collection violations; intent to defraud; breach of contract; breach of good faith and fair dealing; promissory estoppel; tortious interference with contractual relations; conversion; unjust enrichment; breach of fiduciary duty; intentional and/or negligent misrepresentation; malicious, wanton and intentional actions; and violation of Haw. Rev. Stat. chapter 480.  (Id.)  On April 18, 2011, Defendants filed a Motion to Dismiss the Complaint.  (Doc. # 13.)  On July 5, 2011, the Plaintiffs filed an opposition to the Motion to Dismiss.  (Doc. # 32.)  On November 21, 2011, Defendants filed a Reply, stating that they have entered into settlement agreements with bankruptcy trustees on behalf of the estates of APH and the Parsons, thereby releasing APH's and the Parsons' claims against Defendants.  (Id. at 13, 15.)

At the December 5, 2011 hearing on the Motion to Dismiss, the Court was informed that the claims between Defendants and the Parsons and APH were released, and that the only claims remaining were that of Smith and Fitzgerald. Plaintiffs recently retained counsel Arnold Phillips, Esq., who made an oral motion to file an amended complaint.  On December 6, 2011, the Court granted plaintiffs Smith and Fitzgerald leave to amend and denied Defendants' Motion to Dismiss without prejudice.  (Doc. # 48.)

On December 23, 2011, APH and Defendants filed a Stipulation for Dismissal of Complaint with Prejudice as to Plaintiff Aloha Package Homes LLC. (Doc. # 53.)  Also on December 23, 2011, Defendants and the Parsons filed a Stipulation for Dismissal of Complaint with Prejudice as to Plaintiffs Virginia Parsons and Dale J. Parsons, Jr.  (Doc. # 54.)

On January 19, 2012, Plaintiffs filed the present First Amended Complaint ("FAC") against PSI and Mason.  ("FAC," Doc. # 56.)  The FAC alleges the following three claims: (1) Fraud (Id. ¶¶ 80–85); (2) Breach of Contract (Id. ¶¶ 86–89); and (3) Violation of HRS Chapter 480 (Id. ¶¶ 90–94).

On March 5, 2012, Defendants filed the instant Motion to Dismiss First Amended Complaint, or, In the Alternative, For Summary Judgment. ("Mot.," Doc. # 59.)  Defendants also filed a Concise Statement in Support of its Motion.  ("Def's CSOF," Doc. # 60.)  Also on March 5, 2012, Defendants filed an Ex Parte Motion to Strike Declaration of Arnold Theilens [sic] Phillips II, Dated January 19, 2012 ("Motion to Strike").  ("Mot. to Strike," Doc. # 62.)

On March 28, 2012, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss ("Opposition").  ("Opp'n," Doc. # 67.)  Plaintiffs also filed a Concise Statement in Opposition.  ("Pls' CSOF," Doc. # 68.)  Also on March 28, 2012, Plaintiffs filed a Declaration of Virginia Parsons.  (Doc. # 69.)  Attached to

the Virginia Parsons Declaration are the same exhibits attached to Phillips'

Declaration and the FAC.  (See Doc. # 69 Exhs. 1–35.)

On April 4, 2012, Defendants filed a Reply in support of their Motion

to Dismiss ("Reply," Doc. # 72), and a Reply in support of their Ex Parte Motion

to Strike (Doc. # 73).

## STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to

dismiss will be granted where the plaintiff fails to state a claim upon which relief

can be granted.  Review is limited to the contents of the complaint.  See Clegg v.

Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint may be

dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal

theory, or (2) insufficient facts under a cognizable legal claim."  Robertson v. Dean

Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).

Allegations of fact in the complaint must be taken as true and construed in the light

most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney,

Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief. See Twombly, 550 U.S. at 570. A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief. Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be

"exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted). If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F .3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

II.   Motion for Summary Judgment

Summary judgment is granted under Federal Rule of Civil Procedure ("Rule") 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine issue of material fact." <u>Addisu</u>, 198 F.3d at 1134. Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. <u>Porter</u>, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. <u>Id.</u>; <u>see also</u> <u>Nelson v. City of Davis</u>, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts

that the judge is required to resolve in favor of the nonmoving party. <u>T.W. Elec.</u>

<u>Serv.</u>, 809 F.2d at 631.

<u>DISCUSSION</u>

I.     <u>Motion to Strike</u>

As a preliminary matter, Defendants have filed an Ex Parte Motion to

Strike the January 19, 2012 Declaration of Plaintiffs' counsel Arnold Phillips, Esq.

(Doc. # 62.) Defendants contend that the Declaration, filed in support of the 35

exhibits attached to the FAC, should be stricken in its entirety because it

inaccurately describes the exhibits, and because Phillips has no personal

knowledge of the documents he is authenticating. (Doc. # 62-1.) For example,

Defendants note—and the Court observes—that several paragraphs of the

Declaration refer to exhibits as "Plaintiff Fitzgerald's email," when the emails

appear to be to or from Virginia Parsons. (<u>Compare</u> Doc. 56-1 ¶¶ 8–12, 33 <u>with</u>

FAC Exs. 7–11, 28.) As a basis for their Motion to Strike, Defendants cite Local

Rule 7.6, which provides in relevant part:

> Factual contentions made in support of or in opposition to any motion shall
> be supported by affidavits or declarations, when appropriate under the
> applicable rules. Affidavits and declarations shall contain only facts, shall
> conform to the requirements of Fed. R. Civ. P. 56(e) and 28 U.S.C. § 1746,
> and shall avoid conclusions and argument. Any statement made upon
> information or belief shall specify the basis therefor. Affidavits and

declarations not in compliance with this rule may be disregarded by the court.

Plaintiffs have not objected to Defendants' Motion to Strike, but have, seemingly in response, filed a Declaration by former Plaintiff Virginia Parsons and attached to it the exhibits that were previously filed with the FAC. (Doc. # 69.) In a Reply to their Motion to Strike, Defendants state that many of their "prior objections still stand" with respect to Parsons' Declaration. (Doc. # 73.) Specifically, Defendants state that Parsons' Declaration inaccurately describes certain of the exhibits that it supports. (Id.) Defendants do not raise objections as to the authentication of the exhibits attached to Parsons' Declaration.

Because Plaintiffs have resubmitted the exhibits with the Parsons' Declaration, the Court need not and does not consider Mr. Phillips' Declaration or the exhibits attached to the FAC. The Court therefore declines to grant Defendants' Ex Parte Motion to Strike. (Doc. # 62.) To the extent that Plaintiffs' Opposition to Defendant's Motion to Dismiss and Concise Statement of Facts refer to the exhibits attached to the FAC, the Court considers the identically numbered exhibits attached to the Parsons' Declaration. Finally, the Court notes that it does not, in fact, consider the statements in Parsons' Declaration to be evidence.

II.     Motion to Dismiss, or in the Alternative, Summary Judgment

Defendants allege that Plaintiffs' FAC should be dismissed because it

does not set forth any cognizable cause of action against the Defendants and that, in the alternative, the indisputable facts establish that the Plaintiffs have no meritorious claim against Defendants.  (Mot. at 2.)

Defendants make three primary legal arguments: (1) the Plaintiffs' construction contracts are "fixed-price contracts" in which any monies saved or cost overruns inure to the benefit or detriment of the general contractor, not Plaintiffs; (2) PSI fully performed its obligations under the Vineyard and Smith performance bonds because the projects were completed according to the construction contract specifications and free of liens; and (3) Mark Mason, having acted within his capacity as President of PSI, cannot be held personally liable for any of Plaintiffs' claims.  ("Memo," Doc. # 59-1 at 4–5.)[4]

A.     Fixed-Price Contracts

---

[4]  Defendants assert that the FAC appears to reiterate the claims raised by APH in the original Complaint and notes that APH's claims against PSI and Mason have been settled, with the parties stipulating to a dismissal of the claims.  (Memo at 14–15, 18.)  However, Defendants provide no further details other than to reference the FAC, the APH Settlement Agreement, and the Stipulation for Dismissal.  The Court will not speculate as to the merits of this argument.

Defendants also assert that Plaintiffs have provided no documentation supporting the assertion that Fitzgerald and Smith have personally advanced their own funds.  (Memo at 11 n.9.)  To the extent that Defendants are making this argument in part to show that there is no genuine issue that Plaintiffs suffered damages, this unsupported averment in a brief fails to show that an adverse party cannot produce admissible evidence to support the fact.  See Fed. R. Civ. P. 56(c)(1).

Defendants contend that Plaintiffs are not entitled to a return of any funds because the Construction Contracts were "fixed-price contracts" rather than "cost-plus contracts." (Memo at 9.) According to Defendants, because the contracts were fixed-price contracts, the general contractors, rather than the owners, "would ultimately receive the benefit under the contracts if the Projects were completed for less than agreed upon price, or . . . would lose money if the Projects ran over budget." (Id.) Therefore, Defendants argue, any unused funds belong to the general contractors, and Plaintiffs are not entitled to a return of any money. (Id.)

Plaintiffs argue that Defendants' theory lacks merit because the construction contracts were for custom homes and were not fixed-price contracts. (Opp'n at 4.) Plaintiffs assert that they contracted with general contractors to supply labor only, with Plaintiffs controlling the materials supplied. (Id. at 4; Doc. # 68 at 7.) Plaintiffs also argue that Defendants' theory lacks merit because the diverted funds did not go to the contractors, but rather PSI diverted the funds to itself. (Opp'n at 4.)

Under a "lump sum," or "fixed price" contract, the contractor builds the home according to the contract specifications for a fixed price. H.B.I. Corp. v. Jimenez, 803 S.W. 2d 100, 102 (Mo. App. E.D. 1990). "This type of contract

provides the owners with a price known in advance, and provides the contractor

with the ability to increase its profit by minimizing costs." Id.  "A pure fixed price

contract requires the contractor to furnish the goods or services for a fixed amount

of compensation regardless of the costs of performance, thereby placing the risk of

incurring unforeseen costs of performance on the contractor. . . ." Bowsher v.

Merck & Co., Inc., 460 U.S. 824, 826 n.1 (1983).

   "[A]s a general rule, the construction and legal effect to be given a

contract is a question of law." Found. Int'l, Inc. v. E.T. Ige Const., Inc., 78 P.3d

23, 30–31 (Haw. 2003).  The parol evidence rule only applies if an agreement is

integrated—if so, "[a]bsent an ambiguity, [the] contract terms should be interpreted

according to their plain, ordinary, and accepted sense in common speech." Id., at

31 (citation and quotations omitted). Thus, "a prerequisite to the application of the

[parol evidence rule] is that there must first be a finding by the trial court that the

writing was intended to be the final and, therefore, integrated expression of the

parties' agreement." Matter of O.W. Ltd. P'ship, 668 P.2d 56, 60 (Haw. App.

1983) (citing Restatement (Second) of Contracts §§ 209 comment c, 210 comment

b, 213 comment b (1981)) (additional citations omitted).  The court may use all

available evidence in determining whether a contract is integrated.  Seascape

Development v. Fairway Capital, 737 F. Supp. 2d 1207, 1215 (D. Haw. 2010).

"A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning." Airgo, Inc. v. Horizon Cargo Transp., Inc., 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983) (citing Hennigan v. Chargers Football Co., 431 F.2d 308, 314 (5th Cir.1980)). "The court should look no further than the four corners of the document to determine whether an ambiguity exists." Williams v. Aona, 210 P.3d 501, 515 (Haw. 2009) (quoting United Pub. Workers, AFSCME, Local 646, AFL–CIO v. Dawson Int'l, Inc., 149 P.3d 495, 508 (Haw. 2006)). "'[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous.'" Found. Int'l, Inc., 78 P.3d at 33 (citing State Farm Mut. Auto. Ins. Co. v. Fermahin, 836 P.2d 1074, 1077 (Haw. 1992); Hawaiian Ins. & Guar. Co. v. Chief Clerk of the First Circuit Court, 713 P.2d 427, 431 (Haw. 1986)). Further, the Ninth Circuit has stated that a

> written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. Contract terms are to be given their ordinary meaning and when the terms of the contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first.

Flores v. Am. Seafoods Co., 335 F.3d 904, 910 (9th Cir. 2003). Therefore, "courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." United Pub. Workers, 149 P.3d at 508 (quoting State Farm Fire and Cas. Co. v. Pac. Rent-All, Inc., 978 P.2d 753, 762

(Haw. 1999)).  Where a writing is clear and unambiguous and "represents the final and complete agreement of the parties, the parol evidence rule bars evidence of prior contemporaneous negotiations and agreements that vary or alter the terms of a written instrument."  <u>Id.</u> at 508–09 (internal quotation marks and citation omitted).  Accordingly, "[o]nce the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it."  <u>Id.</u> at 509 (quoting <u>Akamine & Sons, Ltd. v. Am. Sec. Bank</u>, 440 P.2d 262, 266 (Haw. 1968)).

  1. <u>The Vineyard Construction Contract</u>

   Defendants assert that the Vineyard Construction Contract is plainly a fixed-price contract as to which any monies saved or cost overruns inure to the benefit or detriment of the contractor and that the contract supersedes any previous agreements.  (Memo at 25.)  Plaintiffs contend that the Vineyard Construction Contract incorporated "the agreements, documents and understandings between the parties" showing that the contract is not a fixed-price contract.  (Opp'n at 5–6.)  Plaintiffs specifically point to the contractor's proposal that predates the contract, as well as an addendum from the contractor.  (Doc. # 68 at 2, 4.)

   As a preliminary matter, the Court finds that the construction contract

is an integrated agreement; that is, it constitutes "a final expression of one or more terms of an agreement." <u>See</u> Restatement (Second) of Contracts § 209 ("Whether there is an integrated agreement is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule."). "[A]n agreement is integrated where the parties thereto adopt the writing or writings as the final and complete expression of the agreement and an 'integration' is the writing or writings so adopted." <u>Pancakes of Haw., Inc. v. Pomare Props. Corp.</u>, 944 P.2d 97, 107 n.6 (Haw. App. 1997) (citing Black's Law Dictionary 809 (6th ed. 1990) (citation omitted)). "[W]here the parties reduce an agreement to a writing [that] in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not

constitute a final expression." Id. at 108 (citing Restatement (Second) of Contracts § 214 comment c at 134 (1981)).

Defendants point to a provision in the GENERAL CONDITIONS section of the contract, which states:

> 1. THE CONTRACT: This instrument, together with the Plans, Specifications and any supplemental instruments which are identified by the signatures of the Owner and the Contractor, shall comprise the Contract. Said documents are complementary and whatever is specified in any one document shall be binding as if specified in all. In case of conflict between the Plans and Specifications, the Specifications shall control.

(Doc. 60-3.) The Court finds that the above provision is an integration clause. The Court also notes that Plaintiffs are not arguing that the Vineyard Construction Contract is not a final embodiment of the agreements between the parties but rather that the previous agreements were incorporated into the Construction Contract. The Construction Contract appears to be a complete agreement. Thus, in the absence of contrary evidence, the Court determines that the Vineyard Construction Contract is integrated. See Restatement (Second) of Contracts § 209. The Court also finds no ambiguity in the contract. Therefore, the parol evidence rule applies to bar evidence of prior negotiations or agreements that vary or alter the contract, see United Pub. Workers, 149 P.3d at 509, and the Court will examine contract terms "according to their plain, ordinary, and accepted sense in common speech." Found. Int'l, Inc.,78 P.3d at 31.

The Vineyard Construction Contract reads, in pertinent part:

That for and in consideration of the payments hereafter mentioned, Contractor hereby covenants and agrees with Owner to furnish and pay for all material, and all labor, equipment, water, power, and all other items necessary for the completion of [the Vineyard Project] . . .

For and in consideration of the covenants, undertakings and agreements of Contractor herein set forth, and upon the full and faithful performance thereof by Contractor, Owner hereby agrees to pay Contractor the sum of

($392,599.00) in lawful money, such payments to be made as follows:

| | |
|---|---|
| $104,824.00 | For construction materials and work start |
| $60,984.00 | When foundation is complete |
| $104,824.00 | When rough framing is complete |
| $60,984.00 | When electric and plumbing rough in are complete |
| $60,983.00 | Upon completion and before occupancy, subject, however, to such additions hereto or deductions therefrom as may be mutually agreed upon in writing during the progress of the work. |

(Doc. 60-3.) These provisions of the contract provide that the contractor agrees to furnish and pay for all material, labor and other items necessary to complete the Vineyard Project "for the sum of $392,599.00[.]" This shows that the contract is a fixed price contract because the language shows an ultimate sum to cover the total cost of the project. See Rosa v. Long, 165 N.C. App. 904 *3 (N.C. App. 2004). Moreover, the contract does not have any reference to a rate of profit for the contractor, as would be the case with a cost-plus contract. See id. (stating that a

contract provision providing for a commission in addition to the project price conflicts with the definition of a fixed price contract).

Plaintiffs insist that the contracts are not "fixed price contracts," and state that the contractor agreed only to fix labor pricing and agreed with Plaintiffs and their respective lenders and PSI that the Plaintiffs would provide their own construction materials. They state that the construction budget set the parameters of the loan from the bank, but that any additions or change orders in addition to the budget would be an added expense borne by Plaintiffs.

Plaintiffs argue that the Vineyard Construction Contract incorporated the contractor's addendums stating the specific "labor only" he was providing. (Doc. # 68 at 2–3, 4.) Plaintiffs point to two documents that they assert were incorporated into the Vineyard Construction Project: a pre-contract "Proposal" from Martin dated August 3, 2007, and a post-contract "Addendum to Contract and Job Cost Breakdown" from Martin dated December 17, 2007.

The Proposal, which was signed by Martin but not by Fitzgerald or Parsons, states, in relevant part:

We will provide material and labor for foundation and slabs, and "labor only" for framing, exterior finish, composition roofing installation, drywall installation and finishing, as well as electrical and plumbing rough in and finish for the New residence and attached cottage . . . for $234,700.00[.]

(Doc. # 69-2 at 3.)  The Proposal then states that it does not include various items, such as "interior carpentry finish work or any materials or supplies, final clean up, installation of appliance, Maui Electric or Hawaiian Tel fees or costs."  It also states: "All materials needed shall be acceptable and be delivered to jobsite."

The December 17, 2007 "Addendum," which is also signed by Martin but not by Fitzgerald or Parsons, states in relevant part:

> New APH Bonding Form does not include monies for Termite treatment, grading, . . . labor for floor installation nor any labor or materials for painting, labor for finish carpentry.  Therefore changing the total contract price from $488,749.00 to $392,599.00.  Thomas A Martin, contractor is not responsible for any of these costs for the completion of this project.

(Doc. # 69-2 at 4.)

As noted, the Proposal and the Addendum were signed by the contractor, but not by Fitzgerald or Parsons.  The Construction Contract expressly provided that certain documents and "any supplemental instruments which are identified by the signatures of the Owner and the Contractor, shall comprise the Contract."  (Doc. # 69-2 at 1.)  Plaintiffs assert that the copies of the Proposal and Addendum provided to the Court were "Owners' copies," and thus the necessity of their signatures was only for the contractor's benefit. (Opp'n at 6.)  Plaintiffs assert that the lack of their signatures does not make the documents any less binding, as "there was consideration and a mutual assent or a meeting of the minds on all

essential elements or terms to create a binding contract." (Id.)    The issue, however, is not whether the Proposal and Addendum documents were binding contracts, but whether they meet the express requirements to be incorporated into the Construction Contract.  Here, the Construction Contract did not make any clear reference to the Proposal and Addendum documents; it only stated that instruments identified by the signatures of the owner and the contractor would be incorporated. Therefore, the Court finds that the Construction Contract did not incorporate the Proposal and Addendum documents.

Plaintiffs also argue that Defendants' fixed-price theory fails because the contract includes a change order provision.  (Opp'n at 7.)  The provision, under the contract's "GENERAL CONDITIONS" section, states:

> 13. CHANGES BY OWNER: The Owner may order change to the work; provided, however, that the Owner and the contractor agree to the cost to be charged therefor.  All such orders and adjustments shall be in writing, and no claim by the Contractor for extra cost shall be made unless the work performed, which is the basis for the extra cost, is ordered by the Owner in writing prior to the performance of the work.

(Doc. # 60-3 at 2.)  Plaintiffs appear to argue that this shows the contract between Smith and the contractor was only limited by the amount of cash provided by the lender; thus, the fixed-price theory is faulty.  (Opp'n at 7.)  This argument reflects a fundamental misunderstanding about fixed-price contracts.  The "Changes by Owner" provision does not merely allow the owner to change the work, but it

requires any changes to be agreed to by the contractor and represented in writing. Indeed, courts have recognized agreements containing change order provisions as fixed-price contracts. See Winmar, Inc. v. Al Jazeera Intern., 741 F. Supp. 2d 165, 171 (D. D.C. 2010) (finding that a contract is a fixed-price contract when "the parties agreed to a total contract amount of $2,873,750, subject to any further additions and/or reductions resulting from additional change orders submitted by the Architect"); Allen & O'Hara, Inc. v. Barrett Wrecking, Inc., 898 F.2d 512, 515 (7th Cir. 1990) ("The contract was a fixed-price contract and called for formal written change orders for any change in price."); BioFunction, LLC v. United States, 92 Fed. Cl. 167, 171 (2010) ("This was a firm, fixed-price contract. When any changes to the contract were to be made, plaintiff was to give the contracting officer 'written notice stating (a) the date, circumstances, and source of the order and (b) that the supplier regard[s] the order as a change order.'").

    In sum, the Court determines that the Vineyard Construction Contract is a fixed-price contract and Fitzgerald was not entitled to any of the bonded funds. It follows that Fitzgerald cannot, as a matter of law, claim that he suffered an injury with respect to the Vineyard bonded funds. Accordingly, as the Court

discusses below, Fitzgerald fails to state a claim for the causes of action in the FAC to the extent they are related to the Vineyard bonded funds.[5]

2.    The Smith Project

The Smith Construction Contract contains a similar integration clause as that in the Vineyard Construction Contract,[6] and appears to be the final agreement between the Smiths and the contractor.  The Court also finds that the Smith Construction Contract is not ambiguous.  Therefore, the Court is barred from considering extrinsic evidence that varies or alters the terms of the contract.

United Pub. Workers, 113 Hawai'i at 140–41; 149 P.3d at 508–09.

---

[5] Plaintiffs also allege that Defendants made Fitzgerald liable for unauthorized finance charges.  (FAC ¶ 49, 56.)  Insofar as Fitzgerald's claims for relief relate to recovery separate from the Vineyard project funds to which he is not entitled, the Court denies Defendants' Motion.

[6] The Smith Construction Contract contains a "GENERAL CONDITIONS" section that includes the following:
1.  THE CONTRACT:  This instrument, together with the Plans, Specifications and any supplemental instruments which are identified by the signatures the Owner and the Contractor [sic], shall comprise the Contract.  Said documents are complementary and whatever is specified in any one document shall be binding as if specified in all.  In the case of a conflict between the Plans and Specifications, the Specifications shall control.  The Disclosure of Lien Rights form is attached as an Addendum and is incorporated herein.
(Doc. # 60-4.)  The provision also provides that "[a]ny additional Addendums are listed below and are incorporated herein:"; this provision is followed by an empty box.  (Id.)

The Smith Construction Contract defines Lehua as the Contractor "as hired by the Owner, to build a custom home" and provides, in relevant part:

> That for and in consideration of the payments hereinafter mentioned, the <u>Contractor hereby covenants and agrees with Owner to furnish a bond and manage payments for all materials,</u> and to pay Contractor and/or Contractor's subcontractors for all labor, equipment, water, power, and all other items necessary for the completion of in accordance with the Plans and Specifications which are identified by the signatures of the parties hereto. . . .
>
> For and in consideration of the covenants, undertakings and agreements herein set forth, and upon the full and faithful performance thereof by Contractor, <u>Owner hereby agrees to pay Contractor through Contractor's bonding entity, and Contractor's bonding entity agrees to distribute, the sum of . . . $430,000.00</u> in lawful money, such amounts to be paid by the Owner or Owner's Lender through the Contractor's bonding entity, and distributed by Contractor's bonding entity accordingly, as follows[.]

(Doc. # 60-4 at 1 (emphasis added).) The contract then lists amounts to be paid at various stages of the project.

Plaintiffs again argue that the Smith Construction Contract is not a fixed-price contract, noting that Lehua, the contractor, was not contracted to purchase materials for Smith and pointing out that the contract specifies that Lehua agrees to "manage payments for all materials." (Opp'n at 7.) Plaintiffs also point again to a "Change Orders" provision in the contract that is similar to that in the Vineyard Construction Contract. (Opp'n at 7–8.)

The Court disagrees.  First, the Smith Construction Contract identifies the contractor as "hired by the Owner, to build a custom home[.]"  That the Smith Construction Contract provides that Lehua covenants to furnish a bond and manage payments for materials, for which the Smiths will pay a set sum of money, does not preclude it from being a fixed-price contract.  Here, under the plain and ordinary terms of the contract, Lehua will complete the home for a set price.  As with the Vineyard Construction Contract, the Smith Construction Contract does not contain any references to a rate of profit for the contractor.  Second, as stated above, the "Change Orders" provision does not affect the fixed-price aspect of a contract. Finally, Lehua president Sandra Duvauchelle stated in a declaration that the "Smith Construction Contract was a fixed-price contract, whereby Lehua Management Services contracted to build the Smith Project for the Owners, for the sum of $430,000.00."  ("Duvauchelle Decl.," Doc. 60-2 ¶ 5.)  Accordingly, the Court finds that the Smith Construction Contract is a fixed-price contract.

The Court recognizes, however, that the Smith Construction Contract also provides that the "total construction cost includes an owner contingency/allowance fund of $32,565.00 for building materials as specified per

the materials contract that Owner has agreed to supply."[7]  (Doc. # 69-34.)  Smith

signed a change order on January 29, 2010—four days after signing the

Construction Contract—deleting $5,742.00 for "Kitchen Cabinets," which added

$5,742.00 to the contingency fund to $38,307.00.  (Pls' CSOF in Opp'n No. 11;

Doc. # 60-8.)  The change order, made to APH, states in part:  "Reimbursements

will be made per the terms of your contract.  Any balance due Aloha Package

Homes is due upon your approval of the Change Order.  An accepted and signed

Change Order shall be incorporated into the APH House Package Contract for

Materials and shall become a part of that Contract."  (Doc. # 60-8.)

PSI asserts that it properly disbursed the contingency/allowance funds

at the instruction of the general contractor, who had obtained Smith's approval.

(Defs. Memo at 28.)  Defendants rely primarily on the declarations of Duvauchelle

and Mason.  Duvauchelle stated that over the course of the contract, Lehua and the

Smiths "agreed upon the allocation of portions of the contingency/allowance fund

to certain project expenses[.]"  (Duvauchelle Decl. ¶ 13.)  Duvauchelle and

Mason's declarations listed project expenses totaling $38,306.77, which they state

---

[7] Duvauchelle stated that although the Construction Contract mentions a
"materials contract" specifying what will be included in Smith's
contingency/allowance, a separate materials contract was not provided.
(Duvauchelle Decl. ¶ 12.)

PSI paid in accordance with the agreement between Lehua and the Smiths.  (Id. ¶ 15; Mason Decl. ¶ 7–8.)  Finally, Duvauchelle stated that upon the completion of the Smith Project, "no funds were due to be paid, repaid, or otherwise remitted to the Owners, either by Pacific Source or by Lehua Management Services" and that Smith reported that he was "satisfied with the Project, as completed." (Duvauchelle Decl. ¶¶ 16–17.)

Plaintiffs respond in part that Duvauchelle's declaration does not state that Smith approved "all" items allocated.  In his declaration, Smith also stated that because he "did not have an accounting of the funds from either Ms. Duvauchelle or [PSI], I had no idea how much money was actually diverted and because I have never had a full reconciliation, I still do not know, nor did I approve the expenditure."  (Smith Decl. ¶ 21.)  Since the record is not adequately developed with respect to this issue, the Court finds the instant Motion for Summary Judgment to be premature.  Defendant's Motion is therefore DENIED WITHOUT PREJUDICE as to Plaintiff Smith.

B.    Count I:   Fraud

The elements of fraud under Hawaii law are: "(1) false representations made by the defendant, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon them, and

(4) plaintiff's detrimental reliance." Fisher v. Grove Farm Co., Inc., 230 P.3d 382, 403 (Haw. Ct. App.2009) (citing Hawaii's Thousand Friends v. Anderson, 768 P.2d 1293, 1301 (1989)); see also Associated Engineers & Contractors, Inc. v. State, 567 P.2d 397, 418 (1977) ("Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another."). "Fraud can be perpetrated by non-disclosure as well as by affirmative misrepresentation." Matsuda v. Wada, 101 F. Supp. 2d 1315, 1324 (D. Haw. 1999).

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded on other grounds by 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. Id. at 1548 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)). "[T]he circumstances constituting the

alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); Walling v. Beverly Enter., 476 F.2d 393, 397 (9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

Defendants argue that Plaintiffs' fraud claim fails to meet Rule 9(b)'s heightened pleading standard. Specifically, Defendants argue: "Plaintiffs have not described with particularity which alleged misstatements or omissions were made by either of the Defendants which Plaintiffs Fitzgerald or Smith, in their individual capacities, were in a position to have relied upon, given the limited nature of the contractual relationship between these Plaintiffs and the Defendants, or which alleged misstatements or omissions these Plaintiffs actually did rely upon to their personal detriment; and they have not made clear whether Plaintiffs Fitzgerald and Smith themselves, rather than APH, sustained damages." (Memo at 19–20.)

Plaintiffs assert that PSI's financial records and communications regarding the Vineyard and Smith project "bond statements, checks, invoices, and other accounting documents including the invoices to be paid from the bonded accounts contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading[.]" (FAC ¶ 82.) For example, Plaintiffs allege that PSI emailed Fitzgerald through APH[8] a copy of a check presumably for the Vineyard project, but that the invoices identified on the check, while named to appear related to the Vineyard Project, were actually for other

---

[8] The email from PSI, attached as an exhibit to the FAC, is actually addressed to Parsons and her husband. (<u>See</u> Doc. 69-12.)

projects.  (Id. ¶¶ 24–26.)  Plaintiffs also allege, inter alia, that PSI created a bonding statement for the Smith Project that falsely claimed a payment on the "APH Material Package" when APH was no longer providing services.  (Id. ¶¶ 72–73.)

The FAC identifies the time and nature of the alleged fraud, as well as, to a large extent, who allegedly made a fraudulent representation.  However, Plaintiffs have not sufficiently asserted how they relied on the alleged misrepresentations beyond their conclusory allegations of reliance.  For example, even assuming that the Smith Project bonding statement mentioned above was a representation to Smith and that Defendants harmed Smith by diverting funds, it is not clear that he even relied on the alleged misrepresentations or how such harm was a result of Smith's reliance.  Accordingly, the Court DISMISSES WITHOUT PREJUDICE Count I for failure to plead sufficient facts to demonstrate a plausible claim.  See Twombly, 550 U.S. at 555.

As stated above, the Court finds that Fitzgerald was not entitled to the bonded funds.  He therefore cannot claim detrimental reliance, a necessary

element of fraud, with respect to the diversion of bonded funds. Accordingly, the

Court DISMISSES Fitzgerald's fraud claim in this respect.[9]

   C. <u>Count II: Breach of Contract</u>

     To prevail on a breach of contract claim, a party must demonstrate:

> (1) the contract at issue; (2) the parties to the contract; (3) whether
> [p]laintiff[ ] performed under the contract; (4) the particular provision of the
> contract allegedly violated ...; (5) when and how [d]efendant allegedly
> breached the contract; [and] (6) how Plaintiffs were injured.

<u>Rodenhurst v. Bank of America</u>, 773 F. Supp. 2d 886, 898 (D. Haw. 2011) (citing

<u>Otani v. State Farm Fire & Cas. Co.</u>, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In

breach of contract actions, . . . the complaint must, at a minimum, cite the

contractual provision allegedly violated. Generalized allegations of a contractual

breach are not sufficient.").

     As stated above, the Court finds that Fitzgerald was not entitled to the

bonded funds because the Vineyard Construction Contract was a fixed-price

contract, and that therefore he cannot establish an injury resulting from the alleged

breach, an element of a breach of contract claim. Therefore, the Court GRANTS

Defendants' Motion for Summary Judgment as to Fitzgerald. Because discovery

---

  [9] As stated <u>supra</u>, however, insofar as Fitzgerald's claims for relief relate to
recovery separate from the Vineyard project funds to which he is not entitled, the
Court denies Defendants' Motion.

issues remain as to Smith, however, Defendants' Motion is DENIED WITHOUT

PREJUDICE as to Smith's breach of contract claim.

     D.     Count III:  Violation of HRS Chapter 480

     The Hawaii Unfair and Deceptive Trade Practices Act states that "any

person who is injured in the person's business or property by reason of anything

forbidden or declared unlawful by this chapter . . . [m]ay sue for damages sustained

by the person," including treble damages, and "[m]ay bring proceedings to enjoin

the unlawful practice."  Haw. Rev. Stat. § 480–13(a)(1), (2).  Section 480–13 of the

Hawaii Revised Statutes "establishes four essential elements: (1) a violation of

chapter 480; (2) injury to plaintiff's business or property resulting from such

violation; (3) proof of the amount of damages; and (4) a showing that the action is

in the public interest or that the defendant is a merchant."  Davis v. Four Seasons

Hotel Ltd., 122 Hawaiʻi 423, 228 P.3d 303, 335 (Haw. 2010).

     Section 480-2 provides that "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce is

unlawful."  Id. § 480–2(a).  A practice is unfair when it "offends established public

policy and when the practice is immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers."  Balthazar v. Verizon Hawaii, Inc., 109

Hawaiʻi 69, 123 P.3d 194, 202 (Haw. 2005).  An act is deceptive when it has "the

capacity or tendency to mislead or deceive." <u>Courbat v. Dahana Ranch, Inc.</u>, 111

Hawaiʻi 254, 141 P.3d 427, 434 (Haw. 2006).

Plaintiffs allege that PSI's actions, including its accounting and billing

practices, constitute unfair or deceptive acts or practices under chapter 480. (FAC

¶¶ 91–92.) Defendants contend that there was no privity of contract between PSI

and Plaintiffs with respect to the alleged financial records and communications.

As stated above, the Court finds that Fitzgerald was not entitled to the

bonded funds, and therefore cannot meet the second and third elements of his claim

under chapter 480. Therefore, the Court GRANTS Defendants' Motion for

Summary Judgment as to Fitzgerald.[10] Because discovery issues remain as to

Smith, however, Defendants' Motion is DENIED WITHOUT PREJUDICE as to

Smith's UDAP claim.

E.    <u>Mark Mason</u>

Defendants argue that Mason should be dismissed as a defendant in

his individual capacity, asserting that he was not a party to the performance bonds

and that officers of a corporation are not personally liable for the corporation's

---

[10] As stated <u>supra</u>, insofar as Fitzgerald's claims for relief relate to recovery
separate from the Vineyard project funds to which he is not entitled, the Court
denies Defendants' Motion.

contractual obligations or actions undertaken by them as agents of the corporation. (Memo at 29.)

Plaintiffs state that the present lawsuit was brought against PSI and President Mark Mason "and if evidence reveals, Mark Mason, as an individual." Although Plaintiffs' allegations largely refer to Mason "in his capacity as Surety and President of Pacific Source," Plaintiffs appear to support their suit against Mason individually by noting that he signed several email correspondence to Parsons "as 'Mark' with no reference to the business or automatic signatory line." (Opp'n at 3 n.2.) These emails, included in exhibits attached to the FAC, show that Mason sent from the email address "mark@pacsource.com" and appear to relate to APH account issues. (Doc. # 69-21, 69-22, 69-29.) The Court is not persuaded by Plaintiffs' reasoning.

Under Hawaii law, so long as there is no intent by the parties to have an officer or an agent of a company be personally liable for a contract that the company enters into, that officer or agent is not individually liable for contract claims arising out of the company's breach of the contract. See Euros Genomics, Inc. v. Genesys Technologies, Inc., 2007 WL 3331830, at *2 (D. Haw. Nov. 9, 2007) (citing Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 166 P.3d 961, 973–74 (Haw. 2007)) (granting judgment on the pleadings in favor of

corporate president because there was no dispute that the president signed the contract at issue in his capacity as director, and there was no intent for the president to be personally liable under the contract); see also Corps Constr. v. Hasegawa, 522 P.2d 694, 695 (Haw. 1974) (citing Restatement (Second) of Agency § 320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."); 17A Corpus Juris Secundum Contracts § 364 (West 2007) ("an individual who signs a corporate contract and indicates the name of the corporation and the nature of his or her representative capacity on the contract is generally not subject to personal liability on the contract").

      Here, Plaintiffs do not allege that the parties intended that Mason be personally liable when he signed the contract on behalf of PSI. Therefore, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' Breach of Contract claim as to Mason.

      The Court, however, finds otherwise with regard to the fraud and UDAP claims. Under Hawai'i law, "it is well established that officers, directors, or shareholders of a corporation may be personally liable for the tortious conduct of the corporation, if they actively or passively participate in such wrongful conduct." Fuller v. Pac. Med. Collections, Inc., 891 P.2d 300, 312 (Haw. App. 1995) (citing

Cahill v. Hawaiian Paradise Park Corp., 543 P.2d 1356 (1975)); see also Burgess v. Arita, 704 P.2d 930, 939 (Haw. App. 1985) ("Where corporate officers or directors participate in the tortious conduct . . . they are not shielded by the corporation and will be personally liable.").

Corporate directors, officers, or agents may be held personally liable under the "civil" liability provisions of chapter 480 if they participate in a corporation's violation of that section. Fuller, 78 Hawai'i at 225, 891 P.2d at 312 (citing Eastern Star, Inc. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 135-36, 712 P.2d 1148, 1155 (1985)). In Eastern Star, the Hawaii Intermediate Court of Appeals also adopted reasoning which extended individual liability to a corporate employee acting within the scope of his or her employment. Id. (citing Eastern Star, 6 Haw. at 136, 712 P.2d at 1156).

Here, Plaintiffs allege that Mason participated in actions that at least in part form the basis of their fraud and UDAP claims. Therefore, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' fraud and UDAP claims against Mason.

## CONCLUSION

For the reasons set forth above, the Court DISMISSES Count I without prejudice as to Smith and DISMISSES Count I as to Fitzgerald. As to

Count II, the Court GRANTS Defendants' Motion for Summary Judgment as to Fitzgerald and DENIES WITHOUT PREJUDICE Defendants' Motion as to Smith. With respect to Count III, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment as to Fitzgerald, and DENIES WITHOUT PREJUDICE Defendants' Motion as to Smith. Finally, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss claims against Mason. (Doc. # 59.)

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 30, 2012.



_____
David Alan Ezra
United States District Judge


Timothy J. Fitzgerald, et al. vs. Pacific Source, Inc., et al., Civil No. 11-00111 DAE-KSC, ORDER: GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT